IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL BANGURA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, ET AL. | : | NO. 07-127 |

**O R D E R - M E M O R A N D U M**

**AND NOW**, this 21st day of September, 2007, upon consideration of the Motion to Dismiss filed by Defendants Temple University, Temple University Health System, Inc., Ellen Sholevar, M.D., and Howard Grant, M.D. (collectively the "Temple Defendants") (Docket No. 45), and Plaintiff's responses thereto, **IT IS HEREBY ORDERED** that:

1. The Motion to Dismiss is **GRANTED;** and

2. All claims against the Temple Defendants are **DISMISSED**.

I.   BACKGROUND

In her Second Amended Complaint, Plaintiff Carol Bangura alleges that, in connection with custody proceedings in the Court of Common Pleas of Philadelphia County, she and her daughter's father, James Lewis, were ordered to participate in the Functional Family Therapy Program ("FFT") at Temple University. (Second Am. Compl. ¶¶ 145-46.)  Before commencing therapy through the program, Plaintiff signed a confidentiality agreement (the "Confidentiality Agreement"), which stated that all private and personal information obtained in the therapy would be confidential, as well as a Release of Information form, which therapist David Manson explained was necessary in order to authorize FFT to inform the court when Plaintiff's therapy began and ended. (Id. ¶¶ 181-83.) Plaintiff and Mr. Lewis met twice with Mr. Manson, on August 9, 2005 and August 15, 2005. (Id. ¶¶ 178-79; 184-85.)  On August 18, 2005, Plaintiff sent a letter to the court, requesting that she be

assigned to a new therapist because Mr. Manson had behaved inappropriately. (Id. ¶ 187). Four days later, however, on August 22, 2005, Mr. Manson sent a letter to Family Court Judge Robert J. Matthews, stating that therapy had been terminated because Plaintiff was profane, inflexible, and abusive of Mr. Lewis.  (Id. ¶ 189.)  On September 13, 2005, Mr. Manson sent a second letter addressed to Plaintiff, with copies to certain court personnel, stating that therapy had been terminated by agreement. (Id. ¶¶ 192-93.)  Both of Mr. Manson's letters were read in court at a custody hearing before Judge Matthews on October 3, 2005.  (Id. ¶¶ 152-54, 190.)  Plaintiff requested at that hearing that she be permitted additional visitation with her daughter, but that request was denied "due to the Judge's assertion that the Plaintiff stopped therapy."  (Id. ¶ 157.)  In the meantime, on September 13, 2005, Plaintiff telephoned Defendant Ellen Sholevar, M.D. to inquire about Mr. Manson's qualifications as a therapist, and she was told that Mr. Manson practiced therapy under Dr. Sholevar's medical license. (Id. ¶¶ 194-95.)  On February 14, 2006, Judge Matthews issued a final custody order, granting full physical and legal custody of Plaintiff's daughter to Mr. Lewis.  (Id. ¶¶ 167-68.)

On February 27, 2007, Plaintiff instituted this pro se action against the Temple Defendants. In the Second Amended Complaint, Plaintiff alleges that the Temple Defendants: (1) violated her procedural due process rights because Mr. Manson's August 22, 2005 letter to the court, describing her as abusive and inflexible, was neither corroborated nor the result of an investigation (Count I); (2) acted negligently in, among other things, allowing Mr. Manson to conduct therapy without a license and releasing fraudulent information to the court in the August 22, 2005 letter (Count II); (3) breached the Confidentiality Agreement by sending the August 22, 2005 letter to the court (Count

V); (4) intentionally inflicted emotional distress upon her (Count VI); and (5) caused her to "lose the liberty of mother and child" (Count VII). [1]

II.     DISCUSSION

The Temple Defendants have moved to dismiss the claims against them pursuant to the Rooker-Feldman doctrine. In the alternative, they argue that Plaintiff has failed to assert a valid constitutional due process claim in either Count I or Count VII, and then urge the Court to decline to exercise supplemental jurisdiction over the remaining claims against them, all of which arise under state law.

   A.    Rooker-Feldman

The Temple Defendants argue that Plaintiff's claims against them should be dismissed under the Rooker-Feldman doctrine because the claims attack the state court's decision regarding custody of Plaintiff's daughter.[2] Under the Rooker-Feldman doctrine, a party who loses in state court may not bring an action in federal court, complaining of injuries caused by the state court judgment. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Likewise, a district court may not "entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional

---

[1] Although Plaintiff refers to the Counts of her complaint as "Claims for Relief" or "Claims for Damages," we will refer to them as Counts for ease of reference.

[2] While the Temple Defendants assert that they are moving to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), their Rooker-Feldman argument is actually a jurisdictional argument that falls under Federal Rule of Civil Procedure 12(b)(1). We will therefore consider it as such. When a defendant challenges the existence of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of showing that the case is properly before the court. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir.1993).

attack was 'inextricably intertwined' with the state court's judgment." Exxon Mobil Corp., 544 U.S. at 286 n.1 (quoting Feldman, 460 U.S. at 482 n.16.)  A claim is "inextricably intertwined" with a state court judgment if it requires the court to determine "that the state court judgment was erroneously entered in order to grant the requested relief." Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004) (citing Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 421 (3d Cir. 2003)).

      Here, Plaintiff's substantive due process claim against the Temple Defendants in Count VII clearly implicates the Rooker-Feldman doctrine as it seeks damages arising from her loss of "liberty of mother and child" (Second Am. Compl. ¶¶ 302-03), which can only be interpreted as a claim for damages resulting from the state court visitation and custody orders. Indeed, in her response to the motion to dismiss, Plaintiff makes clear that her claim for loss of liberty against the Temple Defendants arises out of her allegations that they "interfer[ed] with her rights to visitation by falsely stating that therapy was terminated because of her action." (Pl.'s Br., at 9.) As Plaintiff could only be entitled to damages flowing from the entry of any visitation or custody orders if, in fact, those orders were erroneous, we conclude that we have no jurisdiction over her loss of liberty claim against the Temple Defendants pursuant to the Rooker-Feldman doctrine. See, e.g., Ludwig v. Berks County, Pennsylvania, Civ. A. No. 07-2127, 2007 WL 2463306, at * 2 (E.D. Pa. August 28, 2007) (finding that Rooker-Feldman doctrine barred review of claim seeking damages arising from adverse custody ruling).

      In contrast, we conclude that the Rooker-Feldman doctrine does not prohibit us from exercising jurisdiction over Plaintiff's procedural due process claim against the Temple Defendants in Count I, at least insofar as that claim is grounded on an alleged denial of constitutional rights that occurred during the course of the custody proceedings and does not seek damages flowing from the

court's subsequent visitation and custody orders. Count I sets forth Plaintiff's procedural due process claim against the Temple Defendants as follows:

> The actions of Mr. Manson, Temple University as his employer, Dr. Sholevar, and Temple University Health Systems as the employer as described violated Plaintiff's right to due process as are guaranteed by the Fourteenth Amendment to the United States Constitution by stating in a letter that Plaintiff was "abusive" and "inflexible" without corroboration or investigation which was used against Plaintiff in Family Court Domestic Relations. As a result, Plaintiff was harmed. The Defendant's [sic] acted recklessly and with callous indifference of Plaintiff's rights.

(Second Am. Compl. ¶ 247). As Plaintiff is pro se, we will construe this claim liberally,[3] and interpret it as not only seeking damages flowing from the state court's custody and visitation orders, which would be subject to the Rooker-Feldman bar, but as also seeking other damages for the alleged violation of Plaintiff's rights that occurred when the Temple Defendants failed to corroborate or investigate the factual statements in their letter to the court. See, e.g., Young v. Domestic Relations Div. Enforcement Unit, Civ. A. No. 05-4498, 2007 WL 2319771, at *2 (E.D. Pa. Aug. 10, 2007) (finding no Rooker-Feldman bar to claim for alleged denial of constitutional rights during child support proceedings). As such, we find that the Rooker-Feldman doctrine does not bar Plaintiff's procedural due process claim against the Temple Defendants in Count I insofar as that claim does not seek damages flowing from the custody and visitation orders, but rather, seeks other damages resulting from the Temple Defendants' allegedly unconstitutional conduct.

B. Failure to State a Claim

The Temple Defendants also argue that Plaintiff's procedural due process claim against them should be dismissed because Plaintiff has failed to state a claim upon which relief may be granted

---

[3] "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotations omitted).

5

for violation of her procedural due process rights. When determining a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court looks primarily at the facts alleged in the complaint and its attachments, Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994), and views all well pled allegations in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965.

To state a claim under § 1983 for a state actor's failure to provide procedural due process, a plaintiff must allege: (1) an interest that is encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) that the procedures available to the plaintiff did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). With respect to the second prong, procedural due process ordinarily requires that the governmental deprivation of life, liberty or property be preceded by notice and opportunity to be heard. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982).

In their motion to dismiss, the Temple Defendants acknowledge that Plaintiff is asserting that she was deprived of a liberty interest in her parent-child relationship, and they do not appear to contest the assertion that this interest is, in fact, constitutionally protected.[4] They argue, however,

---

[4] In support of this assertion, Plaintiff cites the United States Supreme Court's decisions in May v. Anderson, 345 U.S. 528, 533 (1952) (stating that mother's right to "the care, custody, management and companionship of her minor children" is an interest "far more precious than . . . property rights"), and Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27 (1981) (stating that parent-child relationship "is an important interest that undeniably warrants deference and, absent a powerful

that Plaintiff has failed to identify any conduct in which the Temple Defendants engaged that could have deprived her of her liberty interest in her parent-child relationship and thus, they argue that Plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff bases her procedural due process claim against the Temple Defendants on her factual allegation that Mr. Manson did not investigate or seek to corroborate his facts before sending the August 22, 2005 letter to Judge Matthews stating that FFT had been terminated because Plaintiff was abusive and inflexible. (Second Am. Compl. ¶ 189.) It is plain, however, that the Temple Defendants did not deprive Plaintiff of her liberty right to her daughter merely by sending that allegedly uncorroborated and erroneous letter. Rather, as the Second Amended Complaint itself alleges, the court entered the orders that limited Plaintiff's visitation and ultimately granted full physical and legal custody to Mr. Lewis. (Id. ¶¶ 157, 167-78.) As such, it was the court that was required to provide Plaintiff with notice and opportunity for a hearing prior to taking action that impacted her liberty interests, and there was no obligation on the part of the Temple Defendants to provide such procedural safeguards prior to sending the August 22, 2005 letter, which itself deprived Plaintiff of no constitutionally protected right. Accordingly, we find that Plaintiff's procedural due process claim against the Temple Defendants fails to state a claim upon which relief can be granted.

  C.  Supplemental Jurisdiction

The Temple Defendants also ask us to dismiss Plaintiff's state law claims for breach of the Confidentiality Agreement, negligence and intentional infliction of emotional distress (Counts II, V and VI). We may exercise supplemental jurisdiction over these state law claims only if they are so closely related to claims against other defendants in the action that they form part of the same case

---

countervailing interest, protection") (internal quotation omitted).

or controversy.  See 28 U.S.C. § 1367; Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) ("Claims are part of the same constitutional case if they 'derive from a common nucleus of operative fact . . . .'" (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966))).  We find that they are not so closely related.

In Count II, the negligence count, Plaintiff claims that (1) Temple University and Dr. Sholevar were negligent for allowing Mr. Manson to conduct therapy without a license (Second Am. Compl. ¶¶ 270, 276), (2) Dr. Sholevar and Mr. Manson were negligent insofar as they accepted the court's request to counsel a minor child even though the FFT program was a research program (id. ¶ 272), (3) Dr. Manson was negligent, because he released fraudulent information to the court four days after Plaintiff complained about his behavior and in violation of the Confidentiality Agreement (id. ¶¶ 273-75); (4) Dr. Grant, the Chief Medical Officer, was negligent for the actions of his employees, because it is the policy of Temple University Health Systems that leaders must ensure that those on their team comply with laws regulations and policies (id. ¶ 277); and (5) Temple Health Systems was negligent for unspecified "actions stemming from Plaintiff's involvement in the program." (Id. ¶ 271).  Meanwhile, Count V alleges breach of the Confidentiality Agreement, and Count VI asserts a claim for intentional infliction of emotional distress, apparently grounded in all of the above alleged misconduct.

As is clear from the above summary of Plaintiff's state law claims, the facts giving rise to the three state law counts against the Temple Defendants arise entirely out of the Temple Defendants' conduct during the FFT sessions, and their sending of the counseling termination letter to the court.  None of the other defendants in this action are alleged to have had any involvement in the conduct of the FFT program or the preparation of the termination letter; rather, the claims against

the other defendants arise out of a completely separate body of facts.  (See, e.g., Second Am. Compl. at ¶¶ 48-88 (claims against Philadelphia police arise out of arrest and processing of Plaintiff's minor child, and release of child to her father); ¶¶ 89-176 (claims against various family court employees arise out of the handling of Plaintiff's custody proceedings); ¶¶ 202-25, 267-69 (claims against school district representatives arise out of school's alleged restriction of Plaintiff's access to her minor child based on unofficial and erroneous letter from attorney)).  We therefore decline to exercise supplemental jurisdiction over the state law claims against the Temple Defendants in Counts II, V and VI, and dismiss those claims without prejudice to Plaintiff's right to refile in state court.

In conclusion, we find that, pursuant to the Rooker-Fedman doctrine, we have no jurisdiction over Plaintiff's substantive due process claim against the Temple Defendants in Count VII.  We further find that Plaintiff has failed to state a claim upon which relief may be granted for a procedural due process violation in Count I.  Finally, we decline to  exercise supplemental jurisdiction over the remaining claims against the Temple Defendants (in Counts II, V, and  VI), all of which arise under state law.  The Temple Defendants' Motion to Dismiss is therefore granted and all claims against the Temple Defendants are dismissed.

BY THE COURT:

 /s/ John R. Padova, J.
John R. Padova, J.