IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL BANGURA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, ET AL. | : | NO. 07-127 |

## ORDER - MEMORANDUM

**AND NOW**, this 1st day of April, 2008, upon consideration of the "Motion for Judgment on the Pleadings filed on Behalf of School District Defendants" (Docket Entry No. 64), and Plaintiff's response thereto, **IT IS HEREBY ORDERED** that the Motion is **GRANTED**. It is **FURTHER ORDERED** that all claims against Defendants the School District of Philadelphia, Geraldine Myles, Dale Mathis, Marie Littman, Gail Borden Krause, Wendy Shapiro, and Paul Vallas are **DISMISSED.**

I.      BACKGROUND

Plaintiff Carol Bangura commenced this *pro se* action against over thirty defendants, including the movants here: the School District of Philadelphia; Geraldine Myles, the Principal at Philadelphia High School for Girls ("Girls' High"); Dale Mathis, the Assistant Principal of Girls' High; Marie Littman a school counselor; Gail Borden Krause, the Director of Support Services for the North Regional Office of the School District; Wendy Shapiro, the Regional Superintendent; and Paul Vallas, the former Chief Executive Officer of the School District of Philadelphia (collectively, the "School District Defendants").

The Third Amended Complaint alleges the following facts relevant to the School District Defendants. On January 19, 2005, Girls' High Principal Myles received a letter from the law firm of Rakanic & Mezzy, LLC, which stated that the firm represented Ray Lewis, the father of Plaintiff's daughter, R.L. (Third Amended Compl. ¶ 116.) According to the letter, custody proceedings were pending in the Philadelphia Family Court, and pursuant to court order, R.L. was in Lewis's custody.

(Id. ¶ 116.) It further stated that a DHS investigation was pending and that "in the interest of [R.L.'s] safety," R.L. was not "under any circumstances to be released from school to the custody of her mother." (Id.) The next day, Plaintiff had a meeting with Principal Myles, Vice Principal Mathis and Counselor Littman. (Id. ¶¶ 117-18.) At the meeting, the School District representatives spoke of a prior meeting with Lewis in which Lewis "made allegations of abuse against Plaintiff." (Id. ¶ 119.)

On November 15, 2005, Plaintiff sent a letter to Paul Vallas and Regional Superintendent Shapiro, complaining that Girls' High had stopped sending her information regarding R.L., including report cards. (Id. ¶ 121.) In response to that letter, Borden-Krause sent a December 2, 2005 letter to Plaintiff, stating that "no document exists at Girls' High which accuses [Plaintiff] of child abuse," and that Plaintiff should be receiving all information regarding R.L., including report cards and interim reports, as Girls' High was in possession of no court order to the contrary. (Id. ¶ 122.) Borden-Krause further stated in the letter that a memo would be sent to R.L.'s teachers, reminding them to share that information with Plaintiff, and represented that she would send a copy of the memo to Plaintiff when she herself received a copy. (Id.) In response to Borden-Krause's letter, Plaintiff sent Borden-Krause a copy of the law firm's January 19, 2005 letter. (Id. ¶ 124.) Plaintiff, however, never received from Borden-Krause any memo that had been sent to R.L.'s teachers. (Id. ¶ 123.)

On December 12, 2005, Regional Superintendent Shapiro sent a letter to Principal Myles, enclosing the January 19, 2005 letter, and stating that if the enclosed letter was in R.L.'s file, it should be removed. (Id. ¶ 125.) As Shapiro explained in her letter: "Since this is not an official court document, it has no affect on how the school deals with Mrs. Bangura." (Id. ¶ 125.)

Nevertheless, in spite of numerous written and verbal requests, Plaintiff was "denied any and all information regarding [R.L.], access to [R.L.'s] school etc. until the filing of this complaint, at which time [she] received a certified mailed copy of child's report card."[1] (Id. ¶¶ 139-40.)

Meanwhile, on December 15, 2005, Plaintiff went to Girls' High and entered through the front entrance, which was unlocked and unsupervised. (Id. ¶ 127) She proceeded to the front office and stated that she wanted to speak to her daughter. (Id.) The office clerk called the gym, and R.L. came to the office. (Id.) A school police officer then escorted Plaintiff and R.L. to an empty classroom for privacy. (Id. ¶ 128.) While Plaintiff and R.L. were in the classroom, two uniformed Philadelphia Police Officers entered the room. (Id. ¶ 129.) According to the Third Amended Complaint, one male officer "physically picked [Plaintiff] up and took [her] to a corner of the room while the other officer, a woman, took [R.L.] out of the classroom." (Id. ¶ 129.) According to the male officer, he had been informed that there was a restraining order against Plaintiff that prevented her from having access to R.L. (Id. ¶ 130.) Vice Principal Mathis told the officers that Plaintiff had "snuck in the backdoor." (Id. ¶ 131.) Principal Myles then joined the group and requested that Plaintiff go to the office, where the two spoke with Regional Superintendent Shapiro. (Id. ¶ 134.) R.L. was then brought to the office to speak to Plaintiff, but Principal Myles did not leave Plaintiff alone with her daughter. (Id. ¶ 135.)

Plaintiff subsequently sent a letter to Ms. Shapiro regarding the December 15, 2005 events. (Id. ¶ 137.) On or after January 26, 2006, Plaintiff received a letter from Ms. Shapiro, who wrote that she had investigated the events at issue and had determined that the Girls' High staff had not

---

[1]While the Third Amended Complaint does not make clear when Plaintiff received a copy of R.L.'s report card, her response to the School District Defendants' Motion for Judgment on the Pleadings clarifies that the report card was sent to her on April 18, 2007.

summoned the police that day but rather, the officers had already been in the building.  (Id. ¶ 137.)
She further reiterated that the school staff had been advised prior to December 15, 2005 that Girls'
High was in possession of no court restraining order pertaining to Plaintiff.  (Id.)  Ms. Shapiro
finally recommended that if Plaintiff had an issue with the police, she should deal with them directly.
(Id.)

On February 27, 2007, Plaintiff instituted this *pro se* action against the School District
Defendants and others.  In the Third Amended Complaint, Plaintiff alleges that the School District
Defendants:  (1) violated her procedural due process rights by failing to report or investigate Lewis's
allegations of abuse as required by 63 Pa. Cons. Stat. Ann. §§  6311, 6319, and various School
District of Philadelphia policies, before denying her "the liberty and fundamental right" to
information regarding her minor child's education  (Count 1); (2) acted negligently in accepting as
true the factual assertions in the law firm letter, falsely stating that no document accusing her of
abuse existed in the School District, and failing to adhere to School District Policy 806, which
requires staff to report allegations of abuse (Count 2); (3) intentionally inflicted emotional distress
upon her (Count 6); and (4) violated her substantive due process rights by causing her to "lose the
liberty of mother and child" (Count 7). [2]

The School District Defendants have moved for judgment on the pleadings, arguing that
Counts 1 and 7 of the Third Amended Complaint fail to state cognizable claims for violation of
Plaintiff's constitutional rights as she does not have a constitutional right (1) to unfettered access to
R.L.'s school records, (2) to visit her daughter on school property, unsupervised, during school

---

[2]Although Plaintiff refers to the Counts of her Complaint as "Claims for Relief" or "Claims
for Damages," we will refer to them as Counts for ease of reference.

hours, or (3) to have allegations of child abuse be reported.  They further argue that judgment should

be entered in their favor on the state law tort claims (negligence and intentional infliction of

emotional distress), because the claims are barred by the Political Subdivision Tort Claims Act, 42

Pa. Cons. Stat. Ann. § 8541 et seq.

II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(c), a party may move for judgment on the

pleadings after the pleadings are closed, but "early enough not to delay trial." Fed. R. Civ. P. 12(c).

Rule 12(c) motions are reviewed under the same standard that applies to motions to dismiss for

failure to state a claim pursuant to Rule 12(b)(6).  Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir.

2004).   When reviewing a 12(b)(6) motion, the court looks primarily at the facts alleged in the

complaint and its attachments, Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d

Cir.1994), and views all well pled allegations in the light most favorable to the plaintiff.  Angelastro

v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.1985).  The motion will be granted if

the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." Bell

Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).   It is not enough for a plaintiff to allege

mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Id. at 1965.

III.    DISCUSSION

A.  Counts 1 and 7  -- Section 1983 Claims

The School District Defendants first argue that Counts 1 and 7 should be dismissed because

they fail to state claims upon which relief may be granted.  Both Counts 1 and 7 assert claims

pursuant to 42 U.S.C. § 1983, with Count 1 asserting a claim for violation of Plaintiff's procedural

due process rights, and Count 7 asserts a claim for violation of substantive due process.  In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. Luger v. Edmundson Oil Co., Inc., 457 U.S. 922, 930 (1982).   When the § 1983 claim is for a state actor's failure to provide procedural due process, a plaintiff must further allege: (1) an interest that is encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) that the procedures available to the plaintiff did not provide due process of law.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  Given these requirements, "in a typical § 1983 action," whether under procedural or substantive due process, "a court must initially determine whether the plaintiff even alleged the deprivation of a right that either federal law or the Constitution protects."  Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).  One such constitutional right is the "right of parents to care for and guide their children," which the Supreme Court has recognized as a "protected fundamental liberty interest."  Anspach v. City of Philadelphia, 503 F.3d 256, 261 (3d Cir. 2007)  (citations omitted). This right has been further described as the "fundamental right of parents to make decisions concerning the care, custody, and control of their children."  Troxel v. Granville, 530 U.S. 57, 66 (2000).

Here, Plaintiff appears to assert in her substantive due process claim that the School District Defendants interfered with her constitutional liberty interest in her parent-child relationship by failing to provide her with information regarding R.L.'s education and denying her an unsupervised visit with R.L., on school premises, during school hours.  Meanwhile, in her procedural due process claim, she appears to assert that the School District Defendants violated her right to procedural due

process by failing to investigate or report to DHS the allegations of abuse against her before denying her educational information regarding, and access to, R.L. on account of those allegations. However, a parent simply has no <u>constitutional</u> right to obtain information regarding her child's education, and has no <u>constitutional</u> right to unsupervised visits with her child on school grounds, during school hours. Indeed, Plaintiff cites us to no authority that recognizes such rights under the United States Constitution (or other federal law) and instead relies solely on her general constitutional liberty right to care for and guide her child. The School District Defendants' failure to provide Plaintiff with information regarding R.L.'s school performance and activities and refusal to leave Plaintiff unsupervised on a single occasion when she visited R.L at school simply did not deprive Plaintiff of that overall right to care for and guide her child. Plaintiff's reliance on her fundamental liberty right to care for and guide her child is, therefore, unavailing. In sum, Plaintiff was required to allege conduct that deprived her of a right that federal law or the Constitution protects and she has failed to do so. The School District Defendants' Motion for Judgment on the Pleadings is consequently granted as to Counts 1 and 7.

>    B.    Counts 2 and 6 -- State Law Claims

The only other claims that Plaintiff has asserted against the School District Defendants are state law claims for negligence and intentional infliction of emotional distress (Counts 2 and 6). The School District Defendants ask us to dismiss these claims under immunity principles. However, having dismissed the federal claims against the School District Defendants, we may exercise our discretion to decline jurisdiction over the remaining state law claims against them. <u>See</u> 28 U.S.C. § 1367(c). Moreover, we may do so in spite of the remaining federal claims against other Defendants in the action as the claims against the School District Defendants are not so closely

related to the claims against the other Defendants that they form part of the same case or controversy. See 28 U.S.C. § 1367; Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) ("Claims are part of the same constitutional case if they 'derive from a common nucleus of operative fact. . . .'" (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966))).

As explained above, Plaintiff alleges in her state law claims that the School District Defendants acted negligently and intentionally inflicted emotional distress upon her insofar as they (1) accepted as true the factual assertions in the law firm letter, (2) falsely stated that no document accusing her of abuse existed in the School District, and (3) failed to adhere to School District Policy 806, which requires staff to report allegations of abuse. The facts giving rise to these two state law claims essentially arise out of the School District Defendants' response to the law firm letter and failure to investigate related allegations of abuse. None of the claims against the remaining Defendants in this action, i.e., the Philadelphia Police Department and its employees (the "Police Defendants") and various Philadelphia Family Court employees (the "Family Court Defendants"), arise out of this same "nucleus of operative fact." Rather, the claims against the Police Defendants arise out of the arrest of R.L. for assault and their subsequent release of R.L. to her father rather than to Plaintiff, her custodial parent; and the claims against the Family Court Defendants are based on their handling of custody proceedings concerning R.L. (See Third Am. Compl. at ¶¶ 25-62 (allegations against Police Defendants); ¶¶ 63-115 (allegations against Family Court Defendants)). Accordingly, we decline to exercise supplemental jurisdiction over the state law claims against the School District Defendants in Counts 2 and 6 and dismiss those claims without prejudice to Plaintiff's right to refile in state court.

IV.  CONCLUSION

In sum, we dismiss the § 1983 claims in Count 1 and 7 of the Third Amended Complaint for failure to state cognizable constitutional claims and decline to exercise jurisdiction over the state law claims in Counts 2 and 6.  The School District Defendants' Motion for Judgment on the Pleadings is, therefore, granted.

BY THE COURT:

 /s/ John R. Padova, J.
John R. Padova, J.