IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL BANGURA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, ET AL. | : | NO. 07-127 |

**MEMORANDUM**

**Padova, J.**                                                                                                **May 21, 2008**

Plaintiff Carol Bangura commenced this *pro se* action against over thirty defendants, including: (1) the City of Philadelphia ("the City"); (2) former Philadelphia Police Commissioner Sylvester Johnson ("Commissioner"); (3) Police Lieutenant Judith Dunne; (4) Police Sergeant Beverly Pembroke; (5) Police Detective Mark Brown; (6) Deputy Police Commissioner Charlotte A. Council (Defendants 1-6, collectively, the "Police Defendants"); (7) Maurice Stovall, a Philadelphia Family Court ("Family Court") intake worker; (8) Stephen Masciantonio, a Family Court Master; (9) Joseph McGill, Director of Case Management at Family Court; (10) Leroy Witt, who does Functional Family Court Therapy referrals for the "REAPP program" at Family Court; (11) Lynn Roman, Supervisor of the REAPP program; (12) Michael Horan, a Family Court Master; and (13) Glenn Andreola, also a Family Court Master. (Defendants 7-13, collectively, the "First Judicial District Defendants.") The Police Defendants and the First Judicial District Defendants have filed a joint Motion for Judgment on the Pleadings, asking for judgment to be entered in Defendants' favor on all claims against them. For the following reasons, we enter judgment in their favor on Plaintiff's federal claims against the Police Defendants, Stovall, Masciantonio, McGill, Horan, and Andreola, dismiss Plaintiff's federal claims against Witt and Roman for lack of jurisdiction, and decline to exercise

supplemental jurisdiction over Plaintiff's state law claims.[1]

## I. BACKGROUND

The Third Amended Complaint alleges in relevant part that prior to January 14, 2005, Plaintiff had primary physical and legal custody of her minor daughter, R.L. (Third Am. Compl. ¶ 22.) On January 14, 2005, however, Philadelphia police officers arrested R.L. for assaulting Plaintiff. (Id. ¶ 25.) At the station, Plaintiff advised an officer of her custody order and was assured that R.L. would be released to her. (Id. ¶¶ 27-28.) Thereafter, however, Plaintiff, who was pregnant, began having stomach cramps and went to the hospital. (Id. ¶ 29.) She informed an officer that she was leaving and supplied the officer with a copy of her home and cell phone numbers, so that she could be called when R.L. was released. (Id. ¶¶ 29-30.) Plaintiff called the police station several times during the night to check on R.L's status, but was informed each time that R.L. was still undergoing processing and that Plaintiff would be contacted when it was time to pick R.L up. (Id. at. 32.)

On the morning of January 15, 2005, Plaintiff again called the police station and this time was told that a shift change had occurred and that R.L. had been released to her father, James Lewis. (Id. ¶ 34.) Sergeant Pembrook got on the phone and instructed Plaintiff that R.L. could be returned to her in accordance with the custody order if she went to Lewis's home with a copy of the custody order and called 911. (Id. ¶ 35.) Plaintiff did as she was told and upon calling 911, Officers Quinn and Corrigan arrived at Lewis's premises. (Id. ¶¶ 37-38.) Plaintiff provided the officers with a copy of her custody order, and the two officers went into Lewis's home. (Id. ¶ 39.) When they came out

---

[1]Plaintiff sets forth the claims in her Third Amended Complaint in sections entitled "Claims for Damages." Her federal claims are in her First, Third, Fourth, and Seventh "Claims for Damages," and her state law claims are set forth in her Second and Sixth "Claims for Damages."

of the house, the officers informed Plaintiff that Lewis had stated that Plaintiff had physically and verbally abused R.L. and that, as a result, R.L. had to remain in Lewis's custody. (Id. ¶¶ 40, 42.) Plaintiff requested that the Department of Human Services ("DHS") be called to investigate, but Officer Quinn denied that request. (Id. ¶ 42.) Plaintiff then drove to the Police Department and spoke with Lieutenant Dunne, who said that she was "'siding' with her officers' decision." (Id. ¶ 45.)

That afternoon, Plaintiff returned to the Police Department and spoke with Detective Brown. (Id. ¶ 46.) Brown instructed Plaintiff to ask for an Operations Room Supervisor, who would get a car to accompany Plaintiff to retrieve R.L. (Id. ¶ 47.) As a result, two officers escorted Plaintiff to Lewis's residence. (Id. ¶¶ 50-51.) After entering the residence and coming back out, the officers again informed her that Lewis had made allegations of abuse and would not allow them to return R.L. to Plaintiff. (Id. ¶ 53.) The officers advised her to go to Family Court and again denied her request that they call DHS. (Id. at ¶ 54.)

On January 18, 2005, Plaintiff, Lewis and R.L. attended a hearing at "Family Court Juvenile." (Id. ¶ 63.) At the hearing, intake worker Stovall told Lewis that R.L. had to go home with Plaintiff. (Id. ¶ 66.) R.L., however stated that she wanted to go home with Lewis, and Stovall, after conferring with Master Masciantonio, permitted R.L. to go home with Lewis. (Id. ¶¶ 67-68.) The next day, Lewis filed an emergency protection from abuse petition on behalf of R.L. (Id. ¶ 88.) At an *ex parte* hearing that same day, Master Horan suspended Plaintiff's parental rights and gave sole custody of R.L. to Lewis. (Id. ¶¶ 75, 82.) Nine days later, on January 27, 2005, at a Rule to Show Cause Hearing, Master Andreola entered an Order giving Lewis primary physical and legal custody of R.L. (Id. ¶¶ 87-88.)

On July 18, 2005, Common Pleas Judge Matthews held a "Semi-Protracted trial" in R.L.'s

custody matter and issued a temporary order, granting Lewis primary physical custody, but awarding Plaintiff and Lewis shared legal custody and granting Plaintiff partial custody on alternating weekends.  (Id. ¶¶ 100, 102-03.)  Judge Matthews also ordered the parties to participate in the Functional Family Therapy Program (the "FFT Program") through the Juvenile Branch and directed Leroy Witt to arrange for counseling.  (Id. ¶¶ 103-05.)  Thereafter, Plaintiff asserted that the therapist to whom she had been assigned had behaved inappropriately, and Mr. Witt told Plaintiff not to return to therapy.  (Id. ¶¶ 108-09.)  On October 3, 2005, Judge Matthews held another hearing and denied Plaintiff additional custody and visitation.  (Id. ¶¶ 113-15.)

In the meantime, Plaintiff had filed an Internal Affairs Complaint against Police personnel Brown, Quinn, Corrigan, Dunne, and Pembrook, alleging that they had violated and/or failed to enforce her custody order, that Quinn and Corrigan had failed to report alleged child abuse, and that Brown and Pembrook had advised her to go to Lewis's house to retrieve R.L.  (Id. ¶¶ 59-60.)  In response, she received a November 15, 2005 letter from Defendant Council, which stated that Brown, Dunne, Quinn and Corrigan were "exonerated from" her allegations that they had violated and/or failed to enforce her custody order, and that the remaining allegations were unfounded.  (Id. ¶ 60.)  Commissioner Johnson promised Plaintiff that he would "personally review" her Internal Affairs Complaint, but he never did so.  (Id. ¶¶ 61-62.)

On February 27, 2007, Plaintiff instituted this *pro se* action against the Police Defendants, the First Judicial District Defendants and others.  She asserts claims against the Police Defendants and the First Judicial District Defendants under 42 U.S.C. § 1983 for violations of her substantive and procedural due process rights, including claims against the City and Commissioner Johnson, as a policy-maker, pursuant to Monell v. Dept. of Soc. Services, 436 U.S. 658 (1978).  Plaintiff also

4

asserts state law negligence and intentional infliction of emotional distress claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but "early enough not to delay trial." Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard that applies to motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004). When reviewing a 12(b)(6) motion, the court looks primarily at the facts alleged in the complaint and its attachments, Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994), and views all well pled allegations in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache §, Inc., 764 F.2d 939, 944 (3d Cir.1985). The motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

## III. DISCUSSION

A. First Judicial District Defendants in their Official Capacities

Plaintiff asserts 42 U.S.C. § 1983 claims against Defendants Master Andreola, Master Masciantonio, Master Horan, Maurice Stovall, and Joseph McGill in their official capacities only. These claims are barred by the Eleventh Amendment.

The Eleventh Amendment prohibits a plaintiff from bringing suit against an unconsenting state in federal court. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58 (1996). This immunity applies not only to the Commonwealth of Pennsylvania, but to entities which are 'arms of the state'

as well." Studli v. Children and Youth Servs., Civ. A. No. 05-374J, 2006 WL 1233708, *5 (E.D. Pa. May 9, 2006) (citing Kentucky v. Graham, 473 U.S. 159 (1985)). In Benn v. First Judicial District of Pennsylvania, 426 F.3d 233, 240 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that the First Judicial District, which employs the First Judicial District Defendants, is a state entity for purposes of Eleventh Amendment immunity. Id. at 241. Moreover, it is well-established that Eleventh Amendment immunity protects not only the state entity, but also the officials of that entity, acting in their official capacity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). This is because "a suit against a state official in his or her official capacity 'is not a suit against the official but rather is a suit against the official's office' and as such, 'it is no different from a suit against the State itself.'" Watkins v. Blocker, Civ. A. No. 06-3775, 2007 WL 789425, *4 (E.D. Pa. March 14, 2007) (quoting Will, 491 U.S. at 71).

Here, as stated above, Plaintiff only asserts claims against Defendants Andreola, Masciantonio, Horan, Stovall, and McGill in their official capacities. As such, these Defendants are entitled to the Eleventh Amendment immunity afforded to their employer, the First Judicial District.[2] See Will, 491

---

[2]Masters Andreola, Masciantonio and Horan are also entitled to judicial immunity. In Hughes v. Long, 242 F.3d 121 (3d Cir. 2001), the Third Circuit explained that judicial immunity extends to individuals who act "as 'arms of the Court,' similar to a guardian ad litem or a court-appointed doctor or psychologist, a non-judicial person who fills a quasi-judicial role at the court's request." Id. at 126. As such, judicial immunity applies to claims against custody masters for their quasi-judicial roles in custody proceedings. Ludwig v. Berks County, Civ. A. No. 07-2127, 2007 WL 2463306, *3 (E.D. Pa. Aug. 28, 2007).

Meanwhile, the only factual allegations regarding Defendant McGill are that he is the Director of Case Management for the Family Court and that he was copied on a March 1, 2005 letter from Master Horan to Plaintiff, which stated that Master Horan had received a formal complaint from Plaintiff regarding Master Andreola, had reviewed the case file, and had concluded that the Plaintiff's complaints dealt with substantive matters that were within the discretion of the Master. (Third Am. Compl. ¶¶ 14, 95.) Under these circumstances, Plaintiff has failed to allege that McGill himself engaged in any conduct that could possibly be construed as depriving Plaintiff of her constitutional rights and, thus, her § 1983 claims against McGill fail on that basis as well as on the basis of Eleventh Amendment immunity.

U.S. at 71. We therefore enter judgment in favor of these Defendants on the federal claims against them.

      B.  First Judicial District Defendants in their Individual Capacities

The only remaining First Judicial District Defendants are Lynn Roman and Leroy Witt, who, unlike the others, have been sued in their individual capacities. According to the Third Amended Complaint, Roman and Witt were involved in Plaintiff's referral to the FFT Program and "knew or should have know that the . . . program was not equipped to handle therapy arising out of custodial disputes in which two parties are litigating for custody." (Third Am. Compl. ¶ 111.) In addition, Plaintiff asserts that Witt read into the record at the October 3, 2005 hearing before Judge Matthews a letter from her therapist, which stated that Plaintiff's therapy had been terminated because Plaintiff was "profane, inflexible, and abusive of Mr. Lewis . . . ." (Id. ¶¶ 113-14.) Relying on these facts, Plaintiff asserts a substantive due process claim against Witt and Roman, seeking damages arising from Plaintiff's loss of "liberty of mother and child." (See id. ¶¶ 190-93.). The precise factual basis for her due process claim is unclear. Plaintiff asserts in her brief in response to the Motion for Judgment on the Pleadings that Witt's reading of the therapist letter, on which Roman had been copied, resulted in the Court's October 3, 2005 denial of her request for additional time with her daughter, because "the Court blamed Plaintiff for the discontinuance of the therapy." (Pl. Br. at 17.) We find that this claim is barred by the Rooker-Feldman doctrine.

Under the Rooker-Feldman doctrine, a party who loses in state court may not bring an action in federal court, complaining of injuries caused by the state court judgment. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Likewise, a district

7

court may not "entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional attack was 'inextricably intertwined' with the state court's judgment." Exxon Mobil Corp., 544 U.S. at 286 n.1 (quoting Feldman, 460 U.S. at 482 n.16.)   A claim is "inextricably intertwined" with a state court judgment if it requires the court to determine "that the state court judgment was erroneously entered in order to grant the requested relief." Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004) (citing Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 421 (3d Cir. 2003)).

Here, Plaintiff claims that Witt and Roman interfered with her "liberty of mother and child" by engaging in conduct that caused the Court to enter the state court's October 3, 2005 Order denying her additional custody and visitation.  This claim is nothing other than a claim for damages arising from the October 3, 2005 custody Order.  Plaintiff would only be entitled to damages flowing from this order if, in fact, she could prove in this Court that the state court order was erroneous.  Consequently, we conclude that we have no jurisdiction over these claims pursuant to the Rooker-Feldman doctrine.  See Ludwig, 2007 WL 2463306, at *2 (finding that Rooker-Feldman doctrine barred review of claim seeking damages arising from adverse custody ruling); see also Bangura v. City of Philadelphia, Civ A. No. 07-127, 2007 WL 3376676, *3 (E.D. Pa. October 15, 2007) (dismissing claims against another defendant in this case on same basis).  We therefore grant Defendants' Motion for Judgment on the Pleadings on Plaintiff's "loss of liberty" claim against Witt and Roman, the only federal claims against these two Defendants, and dismiss those claims for lack of jurisdiction.

      C.      The Police Defendants

The federal claims against the Police Defendants in the Third Amended Complaint are a

combination of procedural due process and substantive due process claims brought pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the police "violated her right to notice and the opportunity to be heard by a fair and impartial tribunal . . . having jurisdiction to change custody" when they released R.L. to Lewis after her arrest and then left R.L. in Lewis's custody. (Third Am. Compl. ¶¶ 34, 42.) She further alleges that the police acted in "callous indifference to her rights" when they failed to "report, investigate and have investigated [Lewis's] allegations of physical and verbal abuse." (Id. ¶ 144.) With respect to the City and Commissioner Johnson, Plaintiff alleges liability under Monell based on their alleged failure to train employees of the Philadelphia Police Department how to properly handle allegations of child abuse and the release of minor children when a custody order exists. (Id. ¶¶ 177-79.)

      1. Substantive Due Process

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. Luger v. Edmundson Oil Co., Inc., 457 U.S. 922, 930 (1982). "Section 1983 does not in and of itself create or secure any substantive rights; it merely authorizes a cause of action when rights secured by another source have been infringed." Gonzalez v. Young, 560 F.2d 160, 168 (3d Cir. 1977).

The Supreme Court has recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child." Santosky v. Kramer, 455 U.S. 745, 753 (1982). However, in Deshaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189 (1989), the Supreme Court made clear that state infringement on a constitutionally-protected interest such as this

9

one must be premised on something more than the failure to act. As it explained, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. at 195. Rather,

> it is the State's <u>affirmative act</u> of restraining the individual's freedom to act on his own behalf - through incarceration, institutionalization, or other similar restraint of personal liberty - which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to protect his liberty interests against harms inflicted by others.

Id. at 200 (emphasis added).

Here, Plaintiff's essential claim is that the police violated her liberty rights by failing to enforce her custody order. In <u>Burella v. City of Philadelphia</u>, 501 F.3d 134 (3d Cir. 2007), the Third Circuit considered whether a plaintiff had a viable substantive due process claim premised upon law enforcement's failure to enforce a protection from abuse order. Id. at 140-41. Relying on <u>Deshaney</u>, the Court held that the plaintiff did not have such a claim, noting that "'if the Due Process clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.'" Id. at 141 (quoting <u>Deshaney</u>, 489 U.S. at 196-97.)

Applying that same logic here, and reading the allegations of the Third Amended Complaint in the light most favorable to Plaintiff, we conclude that Plaintiff has not stated a claim upon which relief may be granted for a violation of substantive due process. Rather than alleging that the officers took affirmative action to deprive her of her parent-child liberty rights, she alleges only that the officers took no action to protect her custody interests against infringement by Lewis. Under <u>Deshaney</u>'s construction of the Due Process Clause, there is no substantive due process right to police protection of an individual's otherwise-protected liberty interests. Thus, although Plaintiff

has a liberty interest in her parent-child relationship, she has not stated a substantive due process claim for violation of that liberty interest. We therefore enter judgment in Defendants' favor on Plaintiff's substantive due process claims.

### 2. Procedural Due Process

To state a § 1983 claim based on a state actor's failure to provide procedural due process, a plaintiff must allege: (1) an interest that is encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) that the procedures available to the plaintiff did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

Here, Plaintiff claims that she had procedural due process right to (1) notice, (2) an investigation into Lewis's allegations of abuse, and (3) a hearing, before the police could refuse to enforce her custody order. As stated above, however, failure of the police to enforce her custody order did not implicate any constitutionally-protected liberty interest. Accordingly, in order to state a claim upon which relief could be granted for violation of her procedural due process rights, she would need to identify an independent source that afforded her a property interest in enforcement of her custody order that would trigger procedural due process protections. See generally Burrella, 501 F.3d at 141-46 (finding no protected property right to police protection under Pennsylvania law and therefore no basis for procedural due process claim for failure to enforce protection from abuse order).

"'Property interests . . . are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Id. at 141 (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). "To have a property interest in a benefit, a person clearly must . . . have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. Neither Plaintiff's Third Amended Complaint nor her brief in opposition to Defendants' Motion suggest any independent source that provides her with a legitimate claim of entitlement to police enforcement of her custody order, and we are aware of no source that conveys such an interest. Consequently, we find that Plaintiff has failed to state a claim upon which relief may be granted for violation of her procedural due process rights.

      3. Monell

Given the failure of Plaintiff's claims that the individual police officers violated her procedural or substantive due process rights by failing to enforce the custody order, Plaintiff's Monell claims against the City and Commissioner Johnson also fail. In order to state a claim against a municipality under Section 1983, a plaintiff must allege in the complaint a policy or custom that deprived him or her of a federally protected right. Bd. of the County Comm'rs. v. Brown, 520 U.S. 397, 404 (1997). "Where . . . the policy in question concerns a failure to train . . . municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "In order for a municipality's failure to train . . . to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees

mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Id. (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)).

Plaintiff alleges that the City and Commissioner Johnson are liable under Monell because they failed to train employees of the Philadelphia Police Department how to properly handle allegations of child abuse and the release of minor children when a custody order exists. However, as explained above, mere police failure to enforce a custody order, as alleged in the Third Amended Complaint, does not implicate any identifiable federally-protected rights. As such, any failure by the City and Commissioner to train police officers regarding enforcement of a custody order following the arrest of a minor and/or in the face of child abuse allegations did not deprive Plaintiff of a federally-protected right, and did not set up employees to make choices that would "frequently cause deprivation of constitutional rights." Carter, 181 F.3d at 1999. Accordingly, Plaintiff has failed to state cognizable Monell claims against the City and Commissioner for failure to train, and Defendants' Motion for Judgment on the Pleadings on Plaintiff's Monell claims is granted.

D.     State Law Claims

The only other claims that Plaintiff has asserted against the First Judicial District Defendants and the Police Defendants are state law claims for negligence and intentional infliction of emotional distress. Having dismissed the federal claims against the First Judicial District Defendants and the Police Defendants, and having previously dismissed Plaintiff's claims against the other named defendants in this action in prior orders, we exercise our discretion to decline jurisdiction over the remaining state law claims against the Federal Judicial District Defendants and Police Defendants. See 28 U.S.C. § 1367(c); Markowitz v. Northeast Land Co., 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal

jurisdiction have been dismissed the case no longer belongs in federal court.")

## IV. CONCLUSION

For the foregoing reasons, we grant the Motion for Judgment on the Pleadings in part, entering judgment against Plaintiff on the federal claims against the Police Defendants, as well as Defendants Stovall, Masciantonio, McGill, Horan, and Andreola, and dismissing the federal claims against Defendants Witt and Roman for lack of jurisdiction. We decline to exercise jurisdiction over the state law claims against these same Defendants, dismissing those claims without prejudice to Plaintiff's right to refile in state court.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL BANGURA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, ET AL. | : | NO. 07-127 |

## ORDER

**AND NOW**, this 21st day of May, 2008, upon consideration of the "Motion for Judgment on the Pleadings Filed on Behalf of City of Philadelphia, First Judicial District, Leroy Witt and Lynn Roman" (Docket No. 67), and Plaintiff's response thereto, **IT IS HEREBY ORDERED** that

1. The Motion is **GRANTED** with respect to the federal claims against the below-listed Defendants.

2. **JUDGMENT IS ENTERED** in favor of Defendants The City of Philadelphia, Sylvester Johnson, Judith Dunne, Beverly Pembroke, Mark Brown, Charlotte A. Council, Maurice Stovall, Stephen Masciantonio, Joseph McGill, Michael Horan, and Glenn Andreola on the federal claims against them.

3. The federal claims against Defendants Leroy Witt and Lynn Roman are **DISMISSED.**

4. The state law claims against all of the moving Defendants are **DISMISSED WITHOUT PREJUDICE**.

5. The Clerk of Court shall **CLOSE** this case statistically.

BY THE COURT:

/s/ John R. Padova, J.
John R. Padova, J.